UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

CIVIL ACTION NO. 04-316-DLB

PAUL CASTELLANOS                                                              PLAINTIFF

vs.                    **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                             DEFENDANT

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Paul Castellanos filed applications for supplemental security income (SSI) and disability insurance benefits (DIB) on February 19, 2002. His applications were denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on April 7, 2003. On May 6, 2003, the ALJ issued an unfavorable decision, finding that Plaintiff was not under a disability. The Appeals Council denied Plaintiff's request for review by letter dated July 30, 2004. Thus, the ALJ's decision represents the final decision of the Commissioner on Plaintiff's case.

Plaintiff, who was 35 years old at the time of the hearing, completed a ninth grade education and alleges an inability to work beginning on December 31, 1995 due to low back and knee pain, arthritis, shortness of breath, acid reflux, depression, anxiety, reading and writing problems, learning problems, chronic fatigue, and insomnia.  At the hearing before the ALJ, Plaintiff indicated that he cannot read, write, or do math; he "stay[s] aggravated and nervous all the time;" and he lies down once a day to calm his nerves.  He also testified that his girlfriend does the household chores, and he sits around the house and watches television.

Having exhausted his administrative remedies, Plaintiff filed the instant action on September 9, 2004.  The matter has culminated in cross motions for summary judgment, which are now ripe for review.

## II.  DISCUSSION

### A.     Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even

if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At Steps 2 and 3, the ALJ found that Plaintiff's borderline intellectual functioning and reading disorder constitute severe impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. At Step 4, the ALJ found that Plaintiff possessed the following residual functional capacity (RFC): although he has no exertional limitations, he is moderately limited in his ability to understand, remember, and carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and interact appropriately with the general public. He is, however, able to understand and carry out simple tasks without excessive productivity demands based on oral instructions. Based on that assessment, the

ALJ concluded that Plaintiff is unable to perform any of his past relevant work.  At Step 5, however, the ALJ found that he is capable of making a successful adjustment to work that exists in significant numbers in the regional and national economies.  This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.     Analysis**

In this appeal, Plaintiff's sole contention of error is that the ALJ erred "by acting as his own medical expert."  Specifically, Plaintiff alleges that the ALJ improperly concluded that his "substance-induced mood disorder" was not a severe impairment at Step 2 of the sequential evaluation.  In support, Plaintiff argues that: 1) the ALJ relied on the opinions of two state agency psychologists who did not have his complete medical record, and 2) the ALJ's finding is inconsistent with a Global Assessment Functioning score of 60, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  For the reasons that follow, the Court concludes that the ALJ's finding that Plaintiff's "substance-induced mood disorder" does not constitute a severe impairment does not require reversal.

Plaintiff first sought treatment for his depression and anxiety at Mountain Comprehensive Care Center (MCCC) at the request of his attorney on February 12, 2002. (Tr. 192).  During his initial interview, Plaintiff admitted to drinking alcohol 1-2 times per week and smoking marijuana everyday to "calm his nerves."  (Tr. 196).  Plaintiff was diagnosed with anxiety disorder not otherwise specified, cannabis abuse, and alcohol abuse. (Tr. 196).  Progress notes from February 21st, indicate an additional diagnosis of

"substance-induced mood disorder," for which Plaintiff was prescribed Wellbutrin. (Tr. 201). As noted by the ALJ in his written decision, Plaintiff attended only one additional counseling session at MCCC, on March 8, 2002. (Tr. 20). This is the extent of Plaintiff's psychological treatment for his depression and anxiety.

Plaintiff was subsequently examined on a consultative basis by Stuart Cook, a licensed clinical psychologist, on March 22, 2002. (Tr. 138). During the exam, Dr. Cook observed that Plaintiff was "somewhat evasive regarding his legal and chemical dependency history ... He states that he drinks beer on occasion ... He admits to a history of cannabis abuse for a number of years but states that he stopped using  ... approximately a year ago." (Tr. 139). Dr. Cook performed psychometric testing on Plaintiff that revealed a Full Scale IQ of 75, and a first-grade reading ability. (Tr. 141). Based upon these findings, Dr. Cook diagnosed Plaintiff with borderline to low average intellectual functioning and a reading disorder. (Tr. 142).

Plaintiff's records from Dr. Cook were subsequently reviewed by two state agency psychologists, Dr. Edward Ross and Dr. Jay Athy.  Dr. Ross opined that Plaintiff has a mental disorder characterized by mixed cognitive/academic delays, and is moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and interact appropriately with the general public. (Tr. 163-64).  Dr. Athy concurred in that assessment and noted additional limitations, namely that Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions. (Tr. 182).  The ALJ concluded that these assessments were consistent with the overall medical record and incorporated them into Plaintiff's RFC. (Tr. 23).  On appeal, Plaintiff alleges that the opinions of the state agency consultants were

incomplete because they did not have the benefit of his records from MCCC and, therefore, the ALJ's reliance on them was improper.[1]

As noted above, Plaintiff's claim implicates Step 2 of the sequential evaluation. The Sixth Circuit has characterized the Step 2 severity regulation as a "de minimis hurdle in the disability determination process." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (per curiam) (citations omitted). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citing *Farris v. Sec'y of Health and Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985)). However, a claim that is "obviously lacking medical merit" can be dismissed if it is "totally groundless' solely from a medical standpoint." *Id.* at 862-63 (quoting *Farris,* 773 F.2d at 90 n. 1). For the reasons that follow, the Court entertains serious doubts whether Plaintiff's alleged "substance-induced mood disorder" passes the severity threshold established by the Sixth Circuit. Nevertheless, the Court concludes that, even if the ALJ had determined that Plaintiff's mood disorder rose to the level of a severe impairment, under applicable federal law, substance abuse (in this case, marijuana) may not be a contributing factor material to a finding of disability. *See* Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847; *Bartley v. Barnhart*, No. 03-6117, 2004 WL 2940845, at *4-5 (6th Cir. Feb. 14, 2005). This well-established rule essentially renders Plaintiff's sole contention on appeal moot.

The ALJ made several findings in determining that Plaintiff's "substance-induced mood disorder" does not constitute a severe impairment. First, he observed that there

---

[1]Plaintiff's records from MCCC were produced during the hearing.

were several inconsistencies in Plaintiff's own report of his history of substance abuse. For example, when he was examined by Dr. Cook on March 8, 2002, Plaintiff reported that he had stopped smoking marijuana one year earlier; however, just two weeks prior, he reported using marijuana on a daily basis to the personnel at MCCC. Second, the ALJ noted that Plaintiff only sought treatment at MCCC on three occasions.[2] Finally, Dr. Cook observed that Plaintiff had a pleasant mood and broad affect, with intact attention and concentration, and mild deficits in memory. (Tr. 20). The ALJ's written decision also reveals, however, that he did not evaluate the areas required of him by regulation. *See* 20 C.F.R. § 404.1520a (describing the special procedure an ALJ must follow in evaluating alleged mental impairments). Nevertheless, other than offering isolated treatment notes, Plaintiff has failed to produce any evidence that his mood disorder limited his ability to do work-related activities. Moreover, even if the Court concluded that Plaintiff's "substance-induced mood disorder" was a severe impairment, it could not award benefits on that basis. The ALJ explained as much to Plaintiff at the hearing. (Tr. 207).

One final matter deserves comment. In his motion, Plaintiff alleges that his Global Assessment Functioning (GAF) score of 60 is inconsistent with the ALJ's finding regarding his "substance-induced mood disorder." In support, he states generally that a GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning according to the American Psychiatric Association, *Diagnostic and*

---

[2] Plaintiff's progress notes from MCCC indicate that the diagnosis of "substance-induced mood disorder" was made by an advanced registered nurse practitioner, certified clinical specialist (ARNP-CS). Plaintiff was also treated by a licensed clinical social worker (LCSW) and certified social worker (CSW) at MCCC. The Court notes that only the nurse practitioner qualifies as an "other source" who may provide information regarding the severity of a claimant's impairment(s). 20 C.F.R. § 1513(d)(1).

*Statistical Manual of Mental Disorders* (4th edition).  Plaintiff, however, fails to identify specifically how the ALJ's finding is inconsistent with the typical limitations attending a GAF score of 60.  In addition, the Court concludes that Plaintiff's RFC included the moderate limitations imposed by Drs. Ross and Athy and, therefore, accurately reflected his mental impairments.

Based on the foregoing, the Court concludes that, although the ALJ did not use the technique required under 20 C.F.R. § 404.1520a to evaluate Plaintiff's alleged mental impairment, that failure is harmless because under applicable federal law, substance abuse may not be a contributing factor material to a determination of disability.  Plaintiff's sole contention of error, therefore, is without merit.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 20th day of July, 2005.



G:\DATA\SocialSecurity\MOOs\7-04-316-CastellanosMOO.wpd